# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs October 4, 2016

## IN RE LYDIA N.-S. [1]

**Appeal from the Chancery Court for Williamson County**
**No. 1805A    Deanna B. Johnson, Chancellor**

_____

**No. M2016-00964-COA-R3-PT – Filed January 31, 2017**

_____

The minor child at the center of this appeal was born on April 3, 2012, in El Paso, Texas. Mother and child moved to Nashville, Tennessee, three months later. Father subsequently moved to Delaware. While living in Delaware, Father pled guilty to two counts of rape and was sentenced to concurrent twenty-five year sentences beginning June of 2013. Mother married Stepfather in late 2013, and in October 2014, Stepfather and Mother filed a petition to terminate Father's parental rights and to allow Stepfather to adopt the child. The petition, as amended, alleged abandonment by failure to visit and failure to support, abandonment by failure to visit or support in the four months prior to Father's incarceration, and Father's incarceration under a sentence of ten or more years with the child being under eight years of age as grounds for termination. Following a trial at which Father, who was incarcerated, participated by telephone, the court terminated Father's parental rights on the grounds of abandonment and incarceration under a sentence of ten years or more and upon a finding that termination was in the child's best interest; the petition for adoption was also granted. Father appeals the termination of his rights, stating that the court erred in denying a motion to continue so he could appear in person and in determining that termination of Father's parental rights was in the best interest of the minor child. Discerning no reversible error, we affirm the judgment of the trial court as modified.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed as Modified**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and ARNOLD B. GOLDIN, J., joined.

Matthew J. Crigger, Brentwood, Tennessee, for the appellant, Jorge N.-S.

---

[1] This Court has a policy of protecting the identity of children in parental termination cases by initializing the last names of the parties.

Jonathan L. Miley, Nashville, Tennessee, for the appellee, Loren A. K. and Dillon D. K.

## OPINION

## II. FACTUAL & PROCEDURAL HISTORY

Lydia N.-S. ["Lydia"] was born on April 3, 2012, to Loren K. ["Mother"] and Jorge N.-S. ["Father"] in El Paso, Texas; Mother and Father were not married. When Lydia was approximately three months old, she and Mother moved to Nashville, Tennessee. Mother and Father remained in contact, and Father saw Lydia twice when Mother returned to El Paso to visit family.

Early in 2013, Father moved to Delaware. In June 2013, Father pled guilty to two counts of third degree rape and was sentenced to concurrent 25 year sentences that would be suspended after two years of mandatory incarceration "at supervision level 5," followed by six months of work release "at supervision level 4," six months of home confinement "at supervision level 4," and two years "at supervision level 3."[2] Father was also required to register as a sex offender.

Mother met Dillon K. ["Stepfather"] in January 2013, and they married in November 2013. On October 3, 2014, Mother and Stepfather filed a "Petition for Termination of Parental Rights and Adoption." As grounds for the termination of Father's rights, the petition alleged abandonment by willful failure to visit and willful failure to support, pursuant to Tennessee Code Annotated section 36-1-102(1)(A)(i), as well as abandonment by failure to visit or support during the four months preceding his incarceration, pursuant to section 36-1-102(1)(A)(iv). The petition was amended to add that Father was confined in a correctional facility under a sentence of ten or more years when Lydia was under eight years of age, in accordance with Tennessee Code Annotated section 36-1-113(g)(6).

On October 20, 2015, an agreed order was entered setting the trial for April 5, 2016. In the week preceding the hearing, Father filed a motion to continue the hearing until October 2016, at which time he expected to be out of prison and able to participate in the trial in person. As grounds for his motion, Father stated that he had been moved to a "less well-equipped" correctional facility and would only be able to participate by telephone for a two-hour time period. The motion was denied.

At the trial on April 5, Father participated by telephone, and he, along with Mother, and Stepfather, testified. Four exhibits were entered into evidence, including Father's "Corrected Sentence Order," Lydia's birth certificate, Mother and Stepfather's

---

[2] There is no explanation in the record of the various levels of supervision.

marriage certificate, and a photo album.[3]  Father's counsel as well as the Guardian *ad litem*, were present during the trial.

On April 20, the court entered a memorandum and order terminating Father's parental rights to Lydia on the ground of abandonment by willful failure to support during the four months preceding Father's incarceration and the ground of Father's confinement in a correctional facility under a sentence of ten years or more, and upon a finding that termination was in Lydia's best interest.  The order also granted the petition for adoption.

Father appeals, raising the following issues for our review:

> 1. Whether the trial court erred in denying [Father]'s motion to continue the final hearing?

> 2. Whether the trial court erred in determining that the termination of [Father]'s parental rights was in the best interests of the minor child?

## II. STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007).  However, that right is not absolute and may be terminated in certain circumstances.  *Santosky v. Kramer*, 455 U.S. 745, 753-54 (1982); *State Dep't of Children's Services v. C.H.K.,* 154 S.W3d 586, 589 (Tenn. Ct. App. 2004).  The statutes on termination of parental rights provide the only authority for a court to terminate a parent's rights.  *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004).  Thus, parental rights may be terminated only where a statutorily defined ground exists.  Tennessee Code Annotated section 36-1-113(c)(1); *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *In re M.W.A.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998).  To support the termination of parental rights, only one ground need be proved, so long as it is proved by clear and convincing evidence.  *In the Matter of D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003).

Because the decision to terminate parental rights affects fundamental constitutional rights and carries grave consequences, courts must apply a higher standard of proof when adjudicating termination cases.  *Santosky*, 455 U.S. at 766-69.  A court may terminate a person's parental rights only if (1) the existence of at least one statutory ground is proved by clear and convincing evidence and (2) it is shown, also by clear and

---

[3] Mother testified relative to many of the photos of Lydia contained in this album.  The clerk and master filed a notice, pursuant to Rule 25(b) of the Tennessee Rules of Appellate Procedure, that the photo album was not included in the record on appeal "due to its size."  No issue is raised in this appeal with respect to the contents of the album.

convincing evidence, that termination of the parent's rights is in the best interest of the child. Tenn. Code Ann.§ 36-1-113(c); *In re Adoption of A.M.H.*, 215 S.W.3d at 808-09; *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). In light of the heightened standard of proof in these cases, a reviewing court must adapt the customary standard of review set forth by Tenn. R. App. P. 13(d). *In re M.J.B.*, 140 S.W.3d 643, 654 (Tenn. Ct. App. 2004). As to the court's findings of fact, our review is *de novo* with a presumption of correctness unless the evidence preponderates otherwise, in accordance with Tenn. R. App. P. 13(d). *Id.* We must then determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. *Id.*

## II. ANALYSIS

### A. MOTION TO CONTINUE

Father first contends that the court erred in denying his motion to continue the trial. The motion was filed five days before trial and stated that Father had been transferred to a lower security facility that was "less well-equipped" and would only permit Father to participate by telephone during a two-hour time period; he argued that this made "conducting a termination hearing via telephone . . . very difficult logistically."

The court held a hearing on the motion and denied it, holding:

2. Pursuant to T.C.A. § 36-1-124, the Court has a statutory obligation to set termination of parental rights hearings, consistent with due process, expeditiously and at the earliest possible date to be given priority over all other civil litigation other than child protection services to provide permanency for children.

3. Pursuant to T.C.A. §36-1-113(k),[4] the Court may only extend a hearing for a termination of parental rights if the Court deems a delay is in the best interests of the minor child to do so, and the Court does not make such a finding in this case.[5]

---

[4] Tennessee Code Annotated section 36-1-113(k) reads in pertinent part:

> The court shall ensure that the hearing on the petition takes place within six (6) months of the date that the petition is filed, unless the court determines an extension is in the best interests of the child. . . .

[5] On appeal, Father argues that "the trial court should have found that a continuance of the hearing was in the best interest of the child as it would have not only allowed [Father] to fully participate in the hearing upon his release from prison, but it would have also allowed [Father] an opportunity to attempt to reconnect with the minor child under the supervision of the court, the Petitioners, and/or the guardian ad litem." In considering the continuance, however, the court was bound to set the hearing expeditiously

4

4. The Father's right and opportunity to participate in the termination of parental rights trial by telephone is in compliance with T.C.A. 36-1-113 (f)(3)[6] and relevant case law in Tennessee and such telephonic participation protects his due process rights.

5. If and only if the father's participation in the termination of parental rights hearing by telephone is impossible or is not reasonable under the telephonic connection at the circumstances on the date of the trial shall this matter be continued to another date set by the Court.

"The granting or denial of a motion for a continuance lies in the sound discretion of the court." *Blake v. Plus Mark, Inc.*, 952 S.W.2d 413, 415 (Tenn. 1997) (citing *Moorehead v. State,* 219 Tenn. 271, 409 S.W.2d 357, 358 (1966)). The court's ruling on such a motion will not be disturbed on appeal "unless the record clearly shows abuse of discretion and prejudice to the party seeking a continuance." *Id.* (citing *State v. Strouth,* 620 S.W.2d 467, 472 (Tenn. 1981), *cert. denied,* 455 U.S. 983, 102 S.Ct. 1491, 71 L.Ed.2d 692 (1982)). In *In re Elizabeth D.,* this Court addressed whether a trial court abused its discretion in denying a motion to continue filed by a father who was incarcerated in another state and participated by phone in the hearing on the petition to terminate his parental rights. In that case, we noted that:

> The standard to be applied in ruling on a motion to continue, as well as this court's review of the ruling was recently set forth in *Tidwell v. Burkes*:
>
> > Continuances are governed by Tennessee Code Annotated 20-7-101 (2009), which provides in pertinent part that continuances "may always be granted by the court, upon good cause shown, in any stage of the action." A ruling on a motion for continuance is a matter of discretion for the trial court and will not be disturbed absent a clear showing of abuse of that discretion. Decisions regarding the granting or denial of a continuance are fact-specific and should be viewed in the context of all existing circumstances

---

absent a determination that a continuance was in Lydia's best interest. Father has failed to assert any facts to support such a determination, and we discern none on the record before us.

[6] Tennessee Code Annotated section 36-1-113 governs termination of parental rights proceedings. Subsection (f) contains specific provisions relative to parents who are incarcerated at the time a termination proceeding is initiated and/or heard. Subsection (f)(3) provides:

> That the incarcerated parent or guardian has the right to participate in the hearing and contest the allegation that the rights of the incarcerated parent or guardian should be terminated, and, at the discretion of the court, such participation may be achieved through personal appearance, teleconference, telecommunication or other means deemed by the court to be appropriate under the circumstances[.]

present at the time of the party's request for continuance. In order to prove that a requested continuance is justified, the party requesting the continuance "must supply some 'strong excuse' for postponing the trial date." When considering a motion for continuance, the following factors are relevant to the trial court's decision: "'(1) the length of time the proceeding has been pending, (2) the reason for the continuance, (3) the diligence of the party seeking the continuance, and (4) the prejudice to the requesting party if the continuance is not granted.'"

*Tidwell v. Burkes*, No. M2015-01270-COA-R3-CV, 2016 WL 3771553, at *5 (Tenn. Ct. App. July 8, 2016) (internal citations omitted).

No. E2015-02097-COA-R3-PT, 2016 WL 5334800, at *5 (Tenn. Ct. App. Sept. 23, 2016).

Tennessee Code Annotated section 36-1-113(f)(3) vests the trial court with the responsibility to make arrangements for the trial to be conducted with or without the physical presence of an incarcerated parent and gives the court considerable discretion in that regard. Father has not cited to any evidence that the arrangements did not satisfy section 113(f)(3) or that the logistics caused any problems in the conduct of the trial. The transcript reflects that the proceedings were transmitted via telephone to Father; that the court instructed Father to let the court know if for any reason he could not hear; that Father participated and was able to respond to questions as they were asked; that Father's counsel was present and participated fully in the proceeding; and that Father was able to communicate with the court when he was unable to hear so that the witnesses or the attorneys could repeat what they had said, reposition the telephone, and/or speak more loudly. The trial court did not abuse its discretion by denying Father's motion to continue.

### B. GROUNDS FOR TERMINATION

As grounds for terminating his rights, the trial court held that Mother and Stepfather had proven that Father had abandoned Lydia by failing to support her within the four months preceding his incarceration, and that he was incarcerated under a sentence of ten years or more, while Lydia was under eight years of age. In his brief, Father states that he "does not challenge the trial court's findings that statutory grounds existed to terminate his parental rights." Nevertheless, mindful of the instruction set forth by our Supreme Court that, "in an appeal from an order terminating parental rights[,] the Court of Appeals must review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests, regardless of whether the parent challenges these findings on appeal," we proceed to address the sufficiency of the

6

evidence to support the grounds for termination. *In Re Carrington H.*, 483 S.W.3d 507, 525-26 (Tenn. 2016) (footnote omitted).

## 1. Abandonment, pursuant to section 36-1-102(1)(A)(iv)

Abandonment is defined in Tennessee Code Annotated section 36-1-102(1)(A), which reads in pertinent part:

> For purposes of terminating the parental or guardian rights of a parent or parents or a guardian or guardians of a child to that child in order to make that child available for adoption, "abandonment" means that:
>
> ***
>
> (iv) A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child.

Tenn. Code Ann. § 36-1-102(1)(A)(iv).

The trial court held that the petitioners "had proven, by clear and convincing evidence, that Father has abandoned Minor child" based upon the following findings:

> [Father] has been in custody since June 2, 2013. The original Petition was filed in this case on October 3, 2013. Thus, [Father] was incarcerated at the time of the filing of the Petition as well as during all of the four months immediately preceding the filing of the Petition. . . .
>
> . . . [Father] did not pay any support at all for Minor Child during February, March, April, or May of 2013. Those were the four months immediately preceding his incarceration. [Father] made $35,000 during that four month period. In addition, [Mother] opened a bank account at Wells Fargo Bank, choosing the same bank [Father] used, so that he could make deposits into that account for the support of his child. [Father] did not deposit any money into that account after November of 201[2].

7

These findings are not contested by Father, and they are supported by the record. Mother testified that she set up a bank account at Father's bank in order for Father to deposit money to support the child. Father and Mother testified that Father deposited $200 or $300 for child support, with the last deposit being made in November 2012; Mother closed that account at the end of 2013. Father testified that he was incarcerated in June 2013, and that during the four months immediately preceding his incarceration, he made between $30,000 and $35,000. He and Mother both testified that he did not pay any money to Mother for Lydia's care and support during those four months. This is clear and convincing evidence supporting the determination that Father abandoned the child by willfully failing to pay child support during the four months preceding his incarceration. We therefore affirm this ground as a basis of the termination of Father's rights.

### 2. Father's Incarceration

Tennessee Code Annotated section 36-1-113(g)(6) provides as a ground for the termination of parental rights:

> The parent has been confined in a correctional or detention facility of any type, by order of the court as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under eight (8) years of age at the time the sentence is entered by the court[.]

Tenn. Code Ann. § 36-1-113(g)(6). In interpreting this provision, this Court has held that "a court considering a petition for termination of parental rights based on Tenn. Code Ann. § 36-1-113(g)(6) need not look beyond the judgment of conviction and the sentence imposed by the criminal court in order to determine whether this ground for termination applies." *In re Audrey S.*, 182 S.W.3d 838, 876 (Tenn. Ct. App. 2005). [7]

---

[7] This Court has also explained that:

> Tenn. Code Ann. § 36–1–113(g)(6) establishes a "'bright line' ground for termination of parental rights." *In re Adoption of K.B.H.,* 206 S.W.3d 80, 85 (Tenn. Ct. App. 2006). The statute requires only that the parent be confined to a correctional facility as a result of a criminal act with a sentence of ten or more years and that the child is under eight years old at the time of the parent's sentencing; there is no lack of clarity, ambiguity, or room for argument. The statute does not contain language regarding the possibility of parole, and, like other courts which have considered this issue, we decline to make such possibility a consideration in applying the statute.

*In re Darion X.Y.*, No. M2012-00352-COA-R3PT, 2012 WL 4474123, at *2 (Tenn. Ct. App. Sept. 27, 2012)

The trial court found that "[Father] has been confined under a sentence of more than ten years and Minor Child is four years old. Indeed, [Father] conceded at the hearing that this section of the code provides a ground for termination." Father does not contest the holding that this ground for termination had been proven.

This holding is supported by Father's sentencing order, which reads with respect to each charge of rape, "The defendant is placed in the custody of the Department of Correction for 25 year(s) at supervision level 5." The order provides that the two sentences are concurrent. The date of the order is January 29, 2014; at that time, Lydia was approximately two years and nine months old, which is under eight years of age, as required by section 113(g)(6). Thus, there is clear and convincing evidence supporting this ground for termination.

## C. BEST INTEREST

Once a ground for termination has been proven by clear and convincing evidence, the trial court must then determine whether it is in the best interest of the child for the parent's rights to be terminated, again using the clear and convincing evidence standard. *In re Valentine*, 79 S.W.3d at 546. The legislature set out a list of factors at Tennessee Code Annotated section 36-1-113(i) for the courts to follow in determining the child's best interest.[8] The list of factors in the statute "is not exhaustive, and the statute does not

---

[8] The factors at Tennessee Code Annotated section 36-1-113(i) are:

In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;
(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;
(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

require every factor to appear before a court can find that termination is in a child's best interest." *In re S.L.A.*, 223 S.W.3d 295, 301 (Tenn. Ct. App. 2006) (citing *Tenn. Dept. of Children's Svcs. v. T.S.W.*, No. M2001-01735-COA-R3-CV, 2002 WL 970434, at *3 (Tenn. Ct. App. May 10, 2002); *In re I.C.G.*, No. E2006-00746-COA-R3-PT, 2006 WL 3077510, at *4 (Tenn. Ct. App. Oct. 31, 2006)). "The parties are free to offer proof of other relevant factors." *In re Carrington H.*, 483 S.W.3d 507, 523 (Tenn. 2016), *cert. denied sub nom. Vanessa G. v. Tennessee Dep't of Children's Servs.*, 137 S. Ct. 44, 196 L. Ed. 2d 28 (2016) (citing *In re Audrey S.,* 182 S.W.3d at 878.). "The weight and relevance of these factors may vary from case to case and it is possible that a single factor is determinative." *In re B.A.C.*, 317 S.W.3d 718, 727 (Tenn. Ct. App. 2009) (quoting *In re D.C.A.*, No. M2008-01279-COA-R3-PT, 2009 WL 837877, at *8 (Tenn. Ct. App. Mar. 30, 2009) (*no perm. app. filed*). As we consider this issue, we apply the instruction in *White v. Moody*:

> [A]scertaining a child's best interests in a termination proceeding is a fact-intensive inquiry requiring the courts to weigh the evidence regarding the statutory factors, as well as any other relevant factors, to determine whether irrevocably severing the relationship between the parent and the child is in the child's best interests. The child's best interests must be viewed from the child's, rather than the parent's, perspective.

171 S.W.3d 187, 193-94 (Tenn. Ct. App. 2004) (internal citations and footnote omitted).

The court devoted 10 pages of the 35-page order to the best interest analysis and made factual findings with respect to each factor; the court then stated whether, and the degree to which, the factor militated in favor of termination of Father's rights.[9] The court determined that there was clear and convincing evidence that it was in Lydia's best interest to terminate the parental rights of Father. In our analysis of this issue, we will

---

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or
(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

[9] In numerous instances, Father argues that the court assigned inappropriate weight to a particular factor. While the court used the term "weigh" or a variation thereof in discussing each factor, "[a]scertaining a child's best interests does not call for a rote examination of each of [the] nine factors and then a determination of whether the sum of the factors tips in favor of or against the parent." *In re Audrey S.,* 182 S.W.3d at 878. In a termination of parental rights case, as noted in *White v. Moody*, 171 S.W.3d at 193-94, the question presented is whether the evidence pertaining to the statutory factors and any other relevant factors supports the conclusion that termination is in the child's best interest. It is not necessary that there be evidence supporting each factor in order to reach the ultimate conclusion. *Id.*; *see also In re B.A.C.*, 317 S.W.3d at 727. The weight of the evidence as to the factors is measured cumulatively rather than individually.

consider whether the evidence clearly and convincingly supports the findings as to each factor and whether those factors support the best interest determination that terminating Father's rights was in Lydia's best interest.

> With respect to factor (1), the court found:
>
> As he testified at trial, he is currently in custody serving a prison sentence for two counts of rape. He anticipates that he will be released from custody at the end of September of 2016. After he is released from custody, [Father] will be required to be on home confinement for at least six months. During that home confinement, [Father] will not be permitted to travel outside of Delaware. Once he has completed the six months of home confinement, [Father] will be on probation for several years. As a convicted felon, [Father] will have great difficulty finding lawful employment, especially in light of his two convictions of rape. [Father] does not have housing arranged at this time. He claims he can stay with a friend of his father's; however, such claims are extremely vague. For these reasons, the Court finds that [Father] has not "made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in [his] home."

Father contends that the trial court's findings with respect to factor (1) are speculative and that the trial court "should have found this factor to be irrelevant because the circumstances at the time of the hearing were the same as when the petition was filed," i.e. that he was still incarcerated. Father testified that he was incarcerated when the petition was filed and at the time of trial, and that he was serving two concurrent 25 year sentences for rape; he anticipated that he would be released from prison in the fall of 2016. The sentencing order stated that he would be placed on work release for six months, then home confinement for six months, followed by two years of "supervision level 3." The only testimony Father offered relative to an adjustment of circumstance or conditions was that a friend of his dad's would permit Father to rent a room after he was released from prison. Significantly, there is no evidence that Father had made an adjustment of his circumstances such that it would be safe for Lydia to be in whatever home he might establish upon his release from prison. This finding is supported by clear and convincing evidence.[10]

> As to factor (2), the court held:
>
> The second factor is whether "the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not

---

[10] The court determined that factor (1) "weighs heavily" against Father.

11

reasonably appear possible." T.C.A. 36-1-113(i)(2). In this case, there was no indication that social services were involved. However, for the same reasons as with factor number one, it does not appear that lasting adjustment would be possible. Therefore, the Court finds that this factor weighs in favor of termination.

Father argues that "[t]he trial court should have found this factor to be irrelevant because social services were not involved in the case and thus did not intervene in an attempt to help [Father] make an adjustment to his lifestyle." As noted by the trial court, there was no proof of involvement by any social service agency in this case. While we do not disagree that the findings relative to factor (1) bear to some degree on factor (2), the statute is clear that "reasonable efforts by available social services agencies" are to be considered. In the absence of same, this factor is not pertinent in determining whether termination of Father's rights is in Lydia's best interest; accordingly, we modify the judgment to remove this as a factor supporting the best interest determination.

Regarding factor (3), the court's findings were as follows:

> The third factor is whether "the parent or guardian has maintained regular visitation or other contact with the child." T.C.A. 36-1-113(i)(3). [Father] has not maintained regular visitation with Minor Child. Indeed, [Father] has not seen Minor Child for over three years -- since she was three months old. Granted, [Father] has been incarcerated during most of that period of time. However, his incarceration is a result of his own criminal conduct and the choices he made to commit crimes.

> Moreover, during the time before [Father] was incarcerated and after [Mother] had moved to Tennessee, [Father] failed to visit Minor Child. During the hearing, [Father] gave numerous excuses for why he did not visit Minor Child; but, the bottom line is: he did not visit her. [Mother] never prevented [Father] from visiting Minor Child. There was never a time when [Father] requested to visit Minor Child and [Mother] declined that request. Although [Mother], at one point, refused to give [Father] her telephone number and address, she called him fairly regularly. In addition, [Mother] offered to pick [Father] up at the airport. During their telephone conversations, he did not always ask about Minor Child and [Mother] did not recall [Father] requesting to see Minor Child. There was no proof presented to the Court that this was a situation in which [Father] was asking to see his child and [Mother] declined those requests. [Father] did not take any legal action in either Texas or Tennessee to obtain visitation. Accordingly, the Court finds that this factor weighs heavily in favor of termination.

Father argues that "the court did not apply sufficient weight to the evidence of [Mother]'s actions geared toward limiting and outright preventing [Father] from visiting with the minor child."

Father testified that the last time he saw and held Lydia was for a "little bit of time" in July 2012; that he and Mother "stayed in contact the whole time" after she relocated to Tennessee and he moved to Delaware; that Mother would send him pictures and videos of Lydia; that they communicated on Skype; that he offered to fly to Tennessee to visit but that Mother wouldn't give him her address; that he tried to get Mother's addresses and "tried to fly [Mother] out here [to Delaware] with the baby"; that they got into an argument around New Year's 2013 after which Mother changed her phone number; that in the four months preceding his incarceration he did not have any contact information for Mother; that while he was in jail, he sent his brother to her mother's home and her aunt's home in El Paso "because [he] was trying to get ahold of her"; and that he "didn't realize [he] went 60, 90 days without talking to my daughter."

Mother testified that when she visited El Paso in 2012, she "let [Father] know when I would be down there so if he wanted to meet up, he would be able to see [Lydia]"; that Father had asked for her address in Nashville, but she did not provide it; that she offered to pick Father up at the airport if he wanted to fly to Nashville to see her and Lydia; that he asked to see Lydia "a few times"; that they maintained contact, though it was often emotional, with cursing and name-calling; that Mother changed her number in March 2013 because she "had recently [received] a threat from [Father] that he was going to kill me and my boyfriend"; and that though Father did not have a phone number or address for her during March through June of 2013, he still had the phone number of Mother's mother.

While Mother's and Father's testimony conflicts to some degree relative to Mother's responses to Father's purported attempts to see Lydia, the record does not support Father's argument that Mother "limit[ed]" or "outright prevent[ed]" Father from visiting Lydia. There is no proof that Father sought to secure court-ordered visitation and no dispute that Father did not maintain regular visitation with Lydia during her lifetime or that this failure was due in substantial part to his poor choices and criminal conduct. The finding is supported by clear and convincing evidence.

With respect to factor (4), the court found that Father had not visited with Lydia in over three years; that Father stated to Mother, "Just tell [Lydia] that I died"; that Father argued and fought with Mother rather than develop a relationship with Lydia; and that he failed to provide diapers, formula, medicine, or other necessities for Lydia. Recounting testimony about Stepfather's activities and positive relationship with Lydia, the court observed that "the void left by [Father] has been filled by [Stepfather]." Father does not argue that the finding is unsupported by the record but, as he did with respect to factor (3), argues that the court did not consider Mother's conduct in limiting his visitation in

13

concluding that this factor "weigh[ed] heavily in favor of termination." Upon our review, the factual finding is supported by clear and convincing evidence.

With respect to factor (5), the trial court concluded that Lydia was well cared for, in pre-preschool, and enjoys her entire family including her cousins, while "[Father] does not even know [Lydia] and she does not know him." Father does not dispute any of the court's factual findings but argues that "[g]ranting [Father] visitation rights would not constitute a change in caretakers" and seeks to have the court grant Father limited or supervised visitation. The question before the court, however, is the best interest of Lydia. The evidence clearly and convincingly supports the court's finding that Lydia is a happy, healthy child who is appropriately bonded with her Mother, Stepfather, and half-brother.[11]

The Court made the following findings with respect to factor (6):

. . . [Father]'s emotional abuse of [Mother] warrant[s] the application of this factor against [Father]. Moreover, the Court finds that [Father] "has shown neglect" of Minor Child. [Father] neglected Minor Child while he and [Mother] lived in El Paso and he neglected Minor Child after [Mother] and Minor Child moved to Tennessee. Therefore, the Court finds that this factor weighs in favor of terminating [Father]'s parental rights.

Mother testified that Father was "mentally abusive, . . . does not make good choices[,] [a]nd [is] manipulative"; she also testified that in early 2013, he threatened to kill her and her boyfriend. Both parties testified about their arguments while she lived in El Paso and after she moved to Tennessee and about how they would curse at and insult each other. Father admitted that he did not provide more than a few hundred dollars in support for Lydia; Mother testified that he also did not provide diapers, medicine, or other necessities when all were living in El Paso. The testimony supports the factual finding.[12]

With respect to factor (7), which requires the court to consider whether the physical environment of the parent's home is healthy and safe, the court found:

[Father] has been convicted of two counts of rape – violent crimes against a woman. Also, [Father] was controlling and emotionally abusive of

---

[11] The court also found the testimony of Mother and Stepfather "very credible" that it was in Lydia's best interest for Father's parental rights to be terminated.

[12] Father argues that both he and Mother used inappropriate language and that there was no proof that such conduct occurred while the minor child was present. This argument is misplaced, as the statute does not require the emotional or psychological abuse to have been directed only toward the child; moreover, the finding was not limited to the use of inappropriate language.

[Mother]. In addition, [Father] has, admittedly, led a life of partying. Finally, [Father] will be on home confinement and then probation for the next several years - formative years in Minor Child's life. [Father] does not even have a definitive place to live. [He] simply cannot provide a safe and stable home for the Minor Child."

Father argues that this finding was "speculative and premature." In considering this factor, the trial court was required to consider the circumstances in which Father lives, and because the record contains Father's testimony that he was currently incarcerated and plans to rent a room from a man who visits him in prison upon his release to home confinement, the court's conclusion that Father "simply cannot provide a safe and stable home for Minor Child" is supported by the evidence.

With respect to factor (8), the trial court found as follows:

The eighth factor is whether "the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child." T.C.A. 36-1-113(i)(8). Based on [Father]'s criminal history, partying life-style, and treatment of [Mother], the Court finds that [Father]'s mental and/or emotional status would be detrimental to Minor Child and would prevent [Father] "from effectively providing safe and stable care for Minor Child." Therefore, this factor also weighs in favor of terminating [Father]'s parental rights.

Father does not dispute his criminal history but argues that "there was no proof he suffered from mental illness or that he was otherwise an emotionally unstable person." While the testimony about Father's history and circumstances supports a determination that he could not provide safe and stable care for Lydia, there was no proof that his mental and/or emotional status would be detrimental to Lydia within the meaning of the statute. Thus, the record does not contain clear and convincing evidence that supports the Court's finding that Father's mental and emotional status would prevent him from providing safe and stable care for the child; accordingly, we modify the judgment to remove this as a factor supporting the best interest determination.

With respect to factor (9), the court determined that Father "has paid virtually no child support" for Lydia. Father conceded that he has not supported Lydia and the record affirms that Father has not paid support, other than a few hundred dollars, despite the facts that Mother opened a bank account at Father's bank to facilitate his deposit of funds and that Father made substantial income in 2013 prior to his incarceration. This finding is supported by clear and convincing evidence.

15

The trial court held that each of the factors at Tennessee Code Annotated section 36-1-113(i) supported the determination that termination of Father's parental rights was in Lydia's best interest. We have concluded that the evidence clearly and convincingly supports seven of those factors and proceed to consider whether the court erred in holding that termination of Father's rights was in Lydia's best interest. In this inquiry, we are instructed that:

> Ascertaining a child's best interests does not call for a rote examination of each of Tenn. Code Ann. § 36-1-113(i)'s nine factors and then a determination of whether the sum of the factors tips in favor of or against the parent. The relevancy and weight to be given each factor depends on the unique facts of each case. Thus, depending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis. *White v. Moody,* 171 S.W.3d [187] at 194 [(Tenn. Ct. App. 2004)].

*In re Audrey S.*, 182 S.W. 3d at 878.

Upon our review of the record, the findings as to seven of the nine factors are supported by clear and convincing evidence and, under the facts of this case, fully support the holding that termination of Father's parental rights is in Lydia's best interests.

## IV. CONCLUSION

In light of the foregoing analysis, we affirm the trial court's denial of Father's motion to continue and the judgment of the court, as modified herein, terminating Father's parental rights to Lydia.

_____
RICHARD H. DINKINS, JUDGE