IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 30, 2005 Session

**IN RE: ADOPTION OF K.B.H.**

**WILLIAM ANTHONY FISHER and SHELBY LYNN HATTER FISHER v. JONATHON YOUNG**

**A Rule 3 Appeal from the Chancery Court for Madison County**
**No. 62014     James F. Butler, Chancellor**

_____

**No. W2005-01018-COA-R3-PT - Filed April 19, 2006**

_____

This a termination of parental rights and adoption case. Before the minor child at issue was born, the biological father was sentenced to ten years imprisonment in a correctional facility. The biological mother and her husband filed a petition to terminate the parental rights of the biological father and permit the mother's husband to adopt the minor child. The trial court granted the petition. We affirm, finding grounds for termination established by the father's confinement to prison for a ten year sentence when the minor child was less than eight years old, and finding clear and convincing evidence to support the trial court's conclusion that termination was in the best interest of the child.

**Tenn. R. App. P. 3; Judgment of the Chancery Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Jeremy B. Epperson, Pinson, Tennessee, for Respondent/Appellant Jonathon Young.

Jennifer Twyman King, Jackson, Tennessee, for Petitioner/Appellees William Anthony Fisher and Shelby Lynn Hatter Fisher.

**OPINION**

This case arises out of a petition to terminate a biological father's parental rights and an application for adoption. The minor child, K.B.H. (d/o/b 8/21/01), was born out of wedlock to Petitioner/Appellee Shelby Lynn Hatter Fisher ("Mother") and Respondent/Appellant Jonathon Young ("Father"). In early 2001, prior to K.B.H.'s birth, the Father began serving a ten-year prison sentence for felony possession of cocaine and possession with intent to sell. For the duration of K.B.H.'s life, Father has been incarcerated in Florida.

During the brief relationship between Mother and Father, Father was Mother's crack-cocaine dealer. In late 2000, Mother began serving a six-month incarceration for violation of probation for a forgery conviction. She learned that she was pregnant while she was incarcerated. She was released from prison approximately a month before K.B.H. was born. After her release, Mother moved to Jackson, Tennessee, and participated in an out-patient drug rehabilitation program. On June 1, 2002, Mother married Petitioner/Appellee William Fisher ("Stepfather"), who now seeks to adopt K.B.H.

On April 13, 2004, Mother and Stepfather (collectively, "Petitioners") filed a petition for termination of Father's parental rights to K.B.H. and for adoption by Stepfather. The petition asserted numerous grounds for termination of Father's parental rights, including: (1) abandonment; (2) willful failure to make child support payments for more than four months immediately preceding the filing of the petition; (3) willful failure to visit; and (4) confinement to a correctional facility under a sentence of ten or more years when the child was less than eight years old at the time of the sentence. The petition asserted that the termination of Father's parental rights was in K.B.H.'s best interest. Additionally, the petition requested that Stepfather be permitted to adopt K.B.H.

On May 3, 2004, Father filed his response to the petition. In his response, Father denied that an abandonment had occurred, denied that he had willfully failed to pay child support, and denied any willful failure to visit K.B.H. Father admitted, however, to being confined to a correctional facility for a ten year sentence, and admitted that K.B.H. was under eight years old at the time of the sentence.

The Chancery Court of Madison County, Chancellor James Butler, held a hearing on the matter on February 11, 2005. Mother testified at the outset. She explained that during the relationship, Father was her drug dealer, and testified that sexual encounters with Father were not voluntary, but were a result of her drug addiction. She described Father as violent, citing examples of violence toward her and toward a prior girlfriend, and said that she feared for her safety. Mother learned that she was pregnant with K.B.H. in January or February of 2001, shortly after she was incarcerated on the forgery charge.

Mother testified that, during her pregnancy, Father contacted her only once, sending her a card asking whether he was the father of her unborn child. She did not respond to that inquiry. Mother said that Father offered her no financial support, either before or after K.B.H.'s birth, and that he had never visited or seen K.B.H. Mother testified that, in contrast, Stepfather had provided financial and emotional support for K.B.H. throughout the duration of Mother's relationship with him. Mother testified that she had also benefitted from substantial familial support after K.B.H. was born, including support from family members who attended her drug rehabilitation meetings with her.

Stepfather was next to testify. Stepfather said that he considers K.B.H. to be his child, and that he has known her since she was four months old. Stepfather testified that he is a self-employed auto wholesaler. He said that he and Mother live in a four-bedroom house and that his job allows

Mother to stay home with her children as often as is necessary. He corroborated Mother's assertion that he had financially and emotionally supported Mother and K.B.H. throughout their relationship.

K.B.H.'s maternal grandmother, Jane Cox, testified as well. A Jackson, Tennessee resident, Cox confirmed that Stepfather had been a good father to K.B.H. and to Mother's other children, and explained that Stepfather was the only father that K.B.H. had ever known.

Finally, Father testified via telephone from his prison in Florida. Father admitted that he was serving a ten-year sentence for possession of cocaine and felony possession with intent to sell. Father acknowledged his extensive criminal history, including drug charges dating back to 1990. He said that he began serving his current ten-year sentence on January 31, 2001. He testified that his probable release date is December 8, 2009, but said that he could be released as early as August 2008.

Father asserted that he sought to locate Mother after learning of her pregnancy, but claimed that the Health & Family Home Services government agency would not cooperate with him. Once he located Mother, he said, he chose not to give her any financial support because he thought that she would just give the money to her boyfriend. Father expressed his willingness and desire to be a part of K.B.H.'s life, and contended that the reason he never contacted or visited K.B.H. was that he never knew where she was. Father's testimony concluded the hearing.

The trial court entered its order on March 29, 2005. The trial court terminated Father's parental rights pursuant to Tennessee Code Annotated section 36-1-113(g)(6), based on the fact that Father was confined to a correctional facility for a ten-year sentence and K.B.H. was less than eight years old at the time of the sentence. The trial court found the termination of Father's parental rights to be in the best interest of K.B.H. The trial court also ruled that Father's parental rights should be terminated pursuant to Tennessee Code Annotated section 36-1-102(1)(A)(iv) for engaging in conduct that was in wanton disregard for K.B.H.'s welfare, finding that Father's criminal history exhibited a wanton disregard for her welfare. The trial court found that such conduct constituted abandonment under the statute. Finally, the trial court ruled that it would be in the best interest of K.B.H. to permit Stepfather to adopt her. Consequently, the trial court allowed Stepfather to adopt K.B.H. and ordered that K.B.H.'s name and social security number be amended to reflect the change. From this order, Father appeals.

On appeal, Father raises three issues. First, Father argues that the trial court erred by terminating his parental rights when the Petitioners failed to prove by clear and convincing evidence that an abandonment occurred. Second, Father argues that the trial court erred in its application of Tennessee Code Annotated section 36-1-113(g)(6), the ground for termination based on his ten-year prison sentence. Finally, Father argues that the trial court committed reversible error by failing to make a finding on the record of the specific statutory grounds on which it relied in finding that terminating his parental rights was in the best interest of K.B.H.

In this non-jury trial, we review the trial court's findings of fact *de novo* upon the record, accompanied by a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). We review the trial court's legal conclusions *de novo* without a presumption of correctness. ***Union Carbide Corp. v. Huddleston***, 854 S.W.2d 87, 91 (Tenn. 1993).

Termination of parental rights in Tennessee is governed by statute. Essentially, the statute mandates that the termination of parental rights must (1) be based on a finding by clear and convincing evidence that a ground for termination has been established, and (2) be in the child's best interest. T.C.A. § 36-1-113(c)(1)-(2) (2005). "Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." ***Hodges v. S.C. Toof & Co.***, 833 S.W.2d 896, 901 n.3 (Tenn. 1992).

We consider first Father's assertion that the trial court erred in applying Tennessee Code Annotated section 36-6-113(g)(6), which provides that termination of parental rights may be based upon a finding that "[t]he parent has been confined to a correctional . . . facility of any type, by order of the court as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under eight (8) years of age at the time the sentence is entered by the court." T.C.A. § 36-1-113(g)(6) (2005). Of course, this finding must be supported by clear and convincing evidence. *Id*. at -1-113(c)(1). In this case, it is undisputed that Father was sentenced to ten years imprisonment when K.B.H. was under the age of eight years old.

Father argues that the trial court erred in its application of this statute because he is unlikely to be incarcerated for the entirety of the ten-year sentence. He contends that he is currently scheduled for release on December 8, 2009, and asserts that he could be released earlier than that. Father admits that he was originally sentenced to exactly ten years, but maintains that it is highly likely that he will end up serving less than ten years. Under these circumstances, he argues, the trial court erred in terminating his parental rights based on his full prison sentence.

Tennessee Code Annotated § 36-1-113(g)(6) was interpreted by this Court in ***In re Adoption of Copeland***, 43 S.W.3d 483, 489 (Tenn. Ct. App. 2000). In ***Copeland***, a father was sentenced to 29 years in prison, but had the possibility of parole before ten years of his sentence had elapsed. Responding to a termination of parental rights petition, the father argued that the court should take into account the possibility of parole, as well as the probability that, after release, the parent will be able to maintain a relationship with the child for ten or more years during the child's minority. The appellate court in ***Copeland*** rejected this argument, finding that the requirements of the statute were "clearly satisfied." *Id.* The court stated, "The statute is silent as to the possibility of parole, and we decline to read any intent on the part of the legislature to account for a mere possibility of early discharge from prison." *Id.*

In this case, Father distinguishes his situation from that presented in ***Copeland***, in that the father in ***Copeland*** had been given a prison sentence substantially in excess of ten years, and the likelihood of a parole before ten years of that sentence had elapsed was characterized as a "mere

possibility." *Id.* Father contends that, in his case, the likelihood is high that he will serve less than ten years, and maintains that the statute should not be applied to his circumstances.

We must decline to adopt Father's reasoning. For many of the grounds for termination of parental rights, the point at which grounds have been established can be unclear and open to interpretation. *See*, *e.g.*, T.C.A. § 36-1-113(g)(3)(A)(i) ("persistent conditions" ground). Under Section 113(g)(6), however, the legislature has established a "bright line" ground for termination of parental rights. Under this provision, grounds for termination have been established where

> [t]he parent has been confined in a correctional or detention facility of any type, by order of the court as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under eight (8) years of age at the time the sentence is entered by the court.

T.C.A. § 36-1-113(g)(6). At the time the statute was enacted, the legislature was certainly aware of parole and other means by which a prisoner could end up released from his or her incarceration prior to expiration of the full sentence, and did not include such circumstances in the language of the statute. As in **Copeland**, we decline to read ambiguity into an unambiguous statute. To adopt Father's interpretation, we would necessarily have to defer termination of an imprisoned parent's parental rights until at least ten years of the prison sentence had elapsed in order to know for certain how much of the sentence the parent will end up serving. Such an interpretation is contrary to the clear intent of the legislature. Here, the statute states that grounds are established if the parent is confined to a correctional facility "under a sentence of ten (10) or more years" at a time when the child at issue is less than eight years old. We must conclude that the trial court did not err in finding that this ground for termination of Father's parental rights was established by clear and convincing evidence, and this finding is affirmed.

Father also argues that the trial court erred by failing to make specific findings on the record of the statutory grounds on which it relied in finding that terminating Father's parental rights was in the best interests of K.B.H. Tennessee Code Annotated section 36-1-113(i) lists numerous non-exclusive factors that the trial court is directed to consider when determining whether termination of parental rights is in the child's best interest. In its order terminating Father's parental rights and permitting adoption, the trial court made a number of factual findings evidencing its consideration of the factors set forth in Section 36-1-113(i). There is no requirement that the trial court make a written finding on each of the enumerated Section 36-1-113(i) factors. We decline to impose such a requirement here. Here, there is ample evidence supporting the trial court's conclusion that termination of Father's parental rights is in the best interest of K.B.H., and this finding is affirmed as well. This holding pretermits the issue of whether the trial court erred in finding that Father had abandoned K.B.H.

The decision of the trial court is affirmed. The costs of this appeal shall be taxed against the Respondent/Appellant Jonathon Young, and his surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE