IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 24, 2012

IN THE MATTER OF **DARION X. Y., DARIUS D. Y.**[1]

**Appeal from the Juvenile Court for Davidson County**
**No. 140951     Alan Edward Calhoun, Special Judge**

———————————

**No. M2012-00352-COA-R3-PT - Filed September 27, 2012**

———————————

Father's parental rights to his son were terminated on the ground that Father is confined in a correctional facility for more than ten years as a result of a criminal act and that the child was under the age of eight at the time of Father's sentencing. Father contends that the trial court should have considered the possibility of his receiving parole in determining whether grounds for termination of his rights were present and whether termination was in the child's best interest. Finding no error, we affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P. J., M. S. and FRANK G. CLEMENT, JR., J., joined.

Guy McClure, Nashville, Tennessee, for the Appellant, David W.

Jade Rogers Maberry, Gallatin, Tennessee, for the Appellee, The Association for Guidance, Aid, Placement and Empathy, Inc.

**OPINION**

The Association for Guidance, Aid, Placement and Empathy, Inc. ("AGAPE"), a licensed child placement agency, initiated a proceeding on September 2, 2009, to be awarded temporary custody of the two children of Miranda Y. ("Mother"), who had voluntarily placed the children with the agency two months previously due to her substance abuse problems. At the time the custody proceeding was initiated, Appellant David W. ("Father"), the father of Darius Y., the eldest child, was incarcerated. A hearing was held on the petition on

———————————

[1] This Court has a policy of protecting the identity of children in parental termination cases by initializing the last names of the parties.

February 5, 2010, and the court thereafter entered an order granting temporary custody of the children to AGAPE.

On April 11, 2011, AGAPE filed a petition to terminate the rights of Mother and Father to Darius and Darius' younger brother.[2]  The petition alleged that Father had abandoned Darius by: (1) failing to support or visit the mother in the four months preceding Darius' birth on September 16, 2007; (2) failing to support or visit Darius in the four months preceding the filing of the petition; (3) being in substantial non-compliance with the permanency plan;  and (4) being confined to a correctional facility as a result of a criminal act under a sentence of ten or more years.

Trial was held on September 29, 2011.  On January 13, 2012, the court entered an order terminating the rights of the parents to each of the children.  With respect to Father, the court found in pertinent part:

> 5.  [Father] was convicted on August 19, 2008 of a felony and he was sentenced on September 18, 2008 to a twenty-five year sentence[.]
> . . . .
> 12.  There was no evidence that [Father] abandoned the minor child, [Darius Y.], either by wilful failure to support or wilful failure to visit.  It appears that he and the mother . . . were together up until the time of his incarceration in September 2008.  However, at the time of his criminal conviction and the twenty-five (25) year sentence (sentence imposed September 18, 2008), [Darius Y.] was less than eight (8) years old.

On the basis of these findings, along with a finding that termination was in the best interest of Darius Y., the court entered an order terminating Father's parental rights pursuant to Tenn. Code Ann. § 36-1-113(g)(6).[3]  Father appeals, asserting that the trial court should have considered the possibility that he would be released from incarceration prior to the expiration of his sentence as a "mitigating factor" when the court applied the statute; he also contends that the court's finding that termination of his parental rights was in Darius' best interest is not supported by clear and convincing evidence.

---

[2]  The youngest child has a different father than Darius.  The termination of parental rights to that child is not at issue in this appeal.

[3]  The record contains an Amended Order filed February 22, 2012.  Although Father filed a document styled "Motion To Alter Or Amend Judgment Alternatively Notice Of Appeal" *pro se* on January 30, the Amended Order does not reference the motion and is substantially the same as the January 13 Order.  There is no explanation in the record or the briefs of why the Amended Order was entered.

DISCUSSION

Parental termination proceedings are governed by statute in Tennessee. *See* Tenn. Code Ann. § 36-1-113. A party seeking to terminate the parental rights of a biological parent must prove at least one of the statutory grounds for termination by clear and convincing evidence.[4] Tenn. Code Ann. § 36-1-113(c)(1); *In re D.L.B.*, 118 S.W.3d 360, 366-67 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). Secondly, the party must prove, also by clear and convincing evidence, that termination of the parental rights of the biological parent is in the child's best interest. Tenn. Code Ann. § 36-1-113(c)(2).

In accordance with Tenn. R. App. P. 13(d), this Court reviews the trial court's findings of fact *de novo* with a presumption of correctness unless the evidence preponderates otherwise. In cases of parental termination, we determine whether the facts, either as found by the trial court, or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. *See Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002); *In re Tiffany B.*, 228 S.W.3d 148, 156 (Tenn. Ct. App. 2007). Whether a ground for termination has been proven by clear and convincing evidence is a question of law, which we review *de novo*, with no presumption of correctness. *In re S.H.*, No. M2007-01718-COA-R3-PT, 2008 WL 1901118, at *4 (Tenn. Ct. App. Apr. 30, 2008) (citing *In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007); *In re Valentine*, 79 S.W.3d at 548).

Father's rights were terminated in accordance with Tenn. Code Ann. § 36-1-113(g)(6), which provides that a proceeding to terminate parental rights may be initiated where:

> The parent has been confined in a correctional or detention facility of any type, by order of the court as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under eight (8) years of age at the time the sentence is entered by the court.

Father acknowledges that he received a twenty-five year sentence and that Darius Y. was under the age of eight at the time of Father's sentencing; he contends, however, that "there are mitigating factors which limit the time he will spend in jail to less than ten years." Specifically, Father argues that it is possible that he will be released prior to the expiration of ten years since he was sentenced as a standard offender at 30%.

---

[4] Because of the fundamental rights involved and the harsh effect of terminating one's parental rights, courts require a higher standard of proof in deciding termination cases. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *Matter of M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998).

Tenn. Code Ann. § 36-1-113(g)(6) establishes a "'bright line' ground for termination of parental rights." *In re Adoption of K.B.H.*, 206 S.W.3d 80, 85 (Tenn. Ct. App. 2006). The statute requires only that the parent be confined to a correctional facility as a result of a criminal act with a sentence of ten or more years and that the child is under eight years old at the time of the parent's sentencing; there is no lack of clarity, ambiguity, or room for argument. The statute does not contain language regarding the possibility of parole, and, like other courts which have considered this issue, we decline to make such possibility a consideration in applying the statute. *See Id.* at 85 ("At the time the statute was enacted, the legislature was certainly aware of parole and other means by which a prisoner could end up released from his or her incarceration prior to expiration of the full sentence, and did not include such circumstances in the language of the statute."); *see also In re Adoption of Copeland*, 43 S.W.3d 483, 489 (Tenn. Ct. App. 2000) ("The statute is silent as to the possibility of parole, and we decline to read any intent on the part of the legislature to account for a mere possibility of early discharge from prison."). Father has been sentenced to more than ten years imprisonment and, at the time of Father's sentencing, Darius was under eight years of age. The evidence in the record does not preponderate against the finding, upon clear and convincing evidence, that the requirements of Tenn. Code Ann. § 36-1-113(g)(6) have been met.

Father contends that the possibility of his not having to serve the entire sentence, along with changes he has made in his life since being sentenced, militate in favor of a finding that it is in Darius' best interest that Father's parental rights be preserved.

In discussing Darius' best interest, the court stated:

> The Court further finds by clear and convincing evidence that pursuant to T.C.A. § 36-1-113(c)(2) it is in the best interests of the said children and the public that all of the parental rights of the said Defendants [Mother and Father] to the said children be forever terminated. . . . [T]hat it is in the best interest of the children that the complete custody, control and guardianship of the said children be awarded to [AGAPE] with the right to place said children for adoption and to consent to adoption *in loco parentis*.

> Specifically, the Court finds by clear and convincing evidence that at the time of trial, the minor children were living in an AGAPE approved pre-adoptive foster home. The children had been together since August 31, 2009, immediately following the birth of the second child . . . upon the voluntary placement by the birth mother with AGAPE. The Home Study of the pre-adoptive foster home was submitted to and received by the Court, and [AGAPE's adoption counselor] gave credible, uncontroverted testimony

-4-

concerning the children's well-being, both in the home and in general. There is no need for the children to be separated from each other in said home. Furthermore, the Home Study shows the pre-adoptive parents to be stable and well able to provide for the children, both emotionally and financially. Both parents are steadily employed with adequate monthly income to support themselves and the children. Neither has a criminal record. They have stable housing. The children are well provided for and are thriving. They receive appropriate medical care and age-appropriate education. All of their needs seem to be satisfied. The Court further finds by clear and convincing evidence that a change of caretakers would be detrimental to the welfare of the minor children.

Furthermore . . . [Father] was and has been incarcerated for the majority of [Darius Y.'s] life and is serving a sentence of twenty-five (25) years. There is no physical relationship between [Father] and said child, and it is uncertain when [Father] will be released from incarceration.

The legislature has set out a list of factors at Tenn. Code Ann. § 36-1-113(i) for the courts to follow in determining the child's best interest.[5] The list of factors in the statute is

---

[5] The factors at Tenn. Code Ann. § 36-1-113(i) are:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;
(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;
(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances or controlled substances analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;
(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental

(continued...)

not exhaustive, and the statute does not require every factor to appear before a court can find that termination is in a child's best interest. *See In re S.L.A.*, 223 S.W.3d 295, 301 (Tenn. Ct. App. 2006) (citing *State of Tenn. Dep't of Children's Servs. v. T.S.W.*, No. M2001-01735-COA-R3-CV, 2002 WL 970434, at *3 (Tenn. Ct. App. May 10, 2002); *In re I.C.G.*, No. E2006-00746-COA-R3-PT, 2006 WL 3077510, at *4 (Tenn. Ct. App. Oct. 31, 2006)).

Father testified that he was enrolled in a number of rehabilitative programs while in prison including drug treatment and a parenting class, and that he was on a work detail which was allowing him to learn plumbing work; he intended that these programs would allow him to assume responsibility for Darius and make him a responsible parent.

The AGAPE counselor who initially assisted Mother testified that, while placement of Darius with Father was not an option, she attempted to place Darius with various of Father's relatives without success. In the course of her efforts, she communicated with Father and delivered cards and letters he had written to Darius; she expressed some concern that, because of his age, Darius had never known Father and did not understand when she told him the cards and letters came from "Daddy." By the time of the hearing, she had found a placement for Darius and his half-brother. Darius' relationship with his brother was also a consideration, as reflected in the court's discussion of Darius' best interest, quoted above. We agree that keeping the children together is appropriate and in the best interest of both children.

We are mindful of Father's efforts to improve himself and do not disparage their significance in any way. The fact that gave the trial court concern – a concern we share – is that Father's argument that termination of his parental rights in not in Darius' best interest is premised upon Father's uncertain release from prison. Even if we were to assume that Father would only serve 30% of the twenty-five year sentence, he would not be released until 2016, when Darius would be at or approaching 9 years old; moreover, Father's future outside of prison would be as uncertain as the date of his release.

The evidence of the uncertainty of Father's situation and the certainty of Darius' situation clearly and convincingly shows that termination of Father's parental rights is in Darius' best interest.

---

[5](...continued)
to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or
(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

## IV. Conclusion

For the reasons set forth above, the order of the Juvenile Court is AFFIRMED.

_____
RICHARD H. DINKINS, JUDGE