FILED

01/15/2021

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 2, 2020

**IN RE SCARLET W. ET AL.**

**Appeal from the Chancery Court for Henderson County**
**No. 27426     James E. Butler, Chancellor**

_____

**No. W2020-00999-COA-R3-PT**
_____

This is a termination of parental rights case. The Chancery Court for Henderson County terminated the parental rights of a mother to two minor children based upon two statutory grounds: persistence of conditions and a ten-year prison sentence while the children were under the age of eight years old. We reverse the trial court's finding that the ground of persistence of conditions was satisfied by clear and convincing evidence. We affirm, however, the trial court's finding that clear and convincing evidence supports termination of the mother's parental rights based upon her current prison sentence. We also affirm the trial court's conclusion that termination is in the best interests of both children.

**Tenn. R. App. P. 3 Appeal as of Right; Reversed in Part; Affirmed in Part; Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ARNOLD B. GOLDIN, J., joined.

Alexander D. Camp, Jackson, Tennessee, for the appellant, Diane W.

Herbert H. Slatery III, Attorney General and Reporter, and Amber L. Seymour, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

**OPINION**

**Background**

The children at issue in this case, Scarlet W. and Talis L. (together, "the children"), were born to parents Diane W. ("Mother") and David L. ("Father") in 2011 and 2013,

respectively. It is undisputed that Mother has not seen the children since 2014 and that Father was caring for the children when the Department of Children's Services ("DCS") first became involved with the family.

In April of 2016, DCS received a referral alleging that the children were neglected and exposed to drugs in Father's care. DCS contacted Father, and Father admitted to abusing methamphetamine. Father also submitted to a drug screen which confirmed his admission. DCS filed a petition for temporary legal custody of the children on May 31, 2016, in the Juvenile Court for Decatur County ("juvenile court") in which DCS alleged that the children were dependent and neglected in Father's care and requested that the children be placed in the temporary care of their paternal grandparents. With regard to Mother, DCS alleged that her whereabouts were unknown and that Mother was not present at the time of the children's removal. That same day, the juvenile court entered a protective custody order in which it found probable cause to believe that the children were dependent and neglected, noting that Father had tested positive for methamphetamine and was arrested for domestic assault against his girlfriend in April of 2016. The juvenile court also noted that "[t]he whereabouts of the children's mother, Diane [W.], are unknown[,]" and that "[Mother] has reportedly been out of the children's lives for approximately (2) years." Accordingly, the children were placed in the temporary custody of Father's parents.

Later, DCS discovered that Mother had been arrested on April 4, 2016, and was in jail facing a first-degree murder charge. Counsel for Mother appeared at the adjudication hearing in the dependency and neglect action and stipulated, on Mother's behalf, that the children were dependent and neglected. Consequently, the juvenile court entered an order affirming that the children were dependent and neglected and that temporary custody should remain with the paternal grandparents. The case was then closed for a period of time.

In December of 2017, DCS discovered that the paternal grandparents were allowing Father to have unsupervised visitation with the children, despite the fact that Father was not in compliance with his permanency plan and continued to abuse methamphetamine. A new dependency and neglect action was initiated in the Henderson County Juvenile Court,[1] and the children were removed from the custody of their grandparents and brought into the custody of DCS on January 24, 2018. After another failed placement with different relatives of Father, the children were eventually placed with CaSandra D. ("Foster Mother") and Jeff D. ("Foster Father") (together, "Foster Parents") in August of 2019. Father surrendered his parental rights to both children in October of 2019.[2]

---

[1] The family was living in Henderson County when the second dependency and neglect action was initiated.

[2] Father did not participate in the trial of this cause and is not a party to this appeal.

In the meantime, Mother remained incarcerated throughout this case. On March 12, 2018, Mother pled guilty to voluntary manslaughter and was sentenced to fifteen years in prison with a service rate of forty-five percent. DCS filed its petition to terminate Mother's parental rights as to both children on September 18, 2019, alleging two grounds for termination: persistence of conditions pursuant to Tennessee Code Annotated section 36-1-113(g)(3), and ten-year prison sentence while the children are younger than eight years old pursuant to section 36-1-113(g)(6). Addressing persistence of conditions, DCS averred that "[Mother] continues to lack the proper housing and financial resources to care for the children because she remains incarcerated." Further, DCS averred that the children were in a pre-adoptive home and that termination would be in the children's best interests.

A trial was held on May 21, 2020 at which Mother, the children's DCS case worker Vatreshia Cox ("Ms. Cox"), and Foster Mother all testified. Overall, Ms. Cox's and Foster Mother's testimony reflected that the children were happy and doing well with Foster Parents and had even expressed the desire to be adopted. Foster Mother testified that both children were involved in various sports and that Scarlet enjoyed dance classes. Foster Mother and Ms. Cox also testified regarding the extended family of the Foster Parents, noting that the children had bonded to Foster Parents' relatives and had nicknames for all of their grandparents. Additionally, Foster Mother testified that the family had recently adopted another child, a fourteen-month-old baby named Finley, to whom the children had become very attached. Foster Mother described Scarlet as behaving as a "mother hen" towards Finley and testified that the children considered Finley their baby sister. Regarding Mother, Ms. Cox and Foster Mother both indicated that the children rarely if ever ask about her, although Foster Mother acknowledged that Mother had sent Scarlet a birthday card. Ms. Cox testified that she had no concerns regarding the children in the Foster Parents' care and that she believed termination of Mother's parental rights was in both children's best interests.

Mother also testified at trial. While Mother acknowledged her fifteen-year prison sentence, she maintained that she would be eligible for parole possibly in 2021 and expressed her desire to have a relationship with the children and to assume custody after her release. Mother asserted that since her incarceration began, she had made several requests that she be able to have contact with the children, but that Ms. Cox essentially refused to accommodate her. Mother and Ms. Cox both testified that Ms. Cox had visited Mother twice since DCS opened its case; however, Mother maintained that at each visit Ms. Cox pressured Mother to surrender her rights and that both times Mother refused. Ms. Cox agreed that she visited Mother twice, and the record reflects that Mother was given the Criteria and Procedures for Termination at both visits and signed the Criteria both times.

Although Mother maintained at trial that she wished to regain custody of the children if released on parole, Mother admitted that she would likely have to live in a half-way house for a period of time after her release, which would make it difficult to provide

for the children. Importantly, Mother also admitted that she had not seen the children since 2014, at which time Talis was approximately one year old. However, Mother blamed Father for her absence from the children's lives and testified that Father kept the children from her and would move sporadically in order to keep Mother from seeing them. Ultimately, Mother's testimony reflected that although she had not seen the children in several years by the time of trial, she still desired to have a relationship with them and did not believe that termination was in the children's best interests. According to Mother, "a six-month attachment [to Foster Parents] would not override a mother's love."

After the close of proof, the trial court ruled that DCS had proven both grounds for termination by clear and convincing evidence. The trial court also found, by clear and convincing evidence, that termination was in both children's best interests. The trial court entered a written order on June 25, 2020, reflecting its ruling, and Mother filed a timely notice of appeal to this Court.

## Issues

Mother's sole issue on appeal is whether the trial court erred in concluding that DCS proved both of the alleged statutory grounds for termination by clear and convincing evidence.[3]

## Standard of Review

Our Supreme Court has explained that:

A parent's right to the care and custody of her child is among the oldest of the judicially recognized fundamental liberty interests protected by the Due Process Clauses of the federal and state constitutions. *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L.Ed.2d 49 (2000); *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L.Ed.2d 551 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *In re Adoption of Female Child*, 896 S.W.2d 546, 547–48 (Tenn. 1995); *Hawk v. Hawk*, 855 S.W.2d 573, 578–79 (Tenn. 1993). But parental rights, although fundamental and constitutionally protected, are not absolute. *In re Angela E.*, 303 S.W.3d at 250. "'[T]he [S]tate as *parens patriae* has a special duty to protect minors....' Tennessee law, thus, upholds the [S]tate's authority as *parens patriae* when interference with parenting is necessary to prevent serious harm to a child." *Hawk*, 855 S.W.2d at 580 (quoting *In re Hamilton*, 657 S.W.2d 425, 429 (Tenn. Ct. App. 1983)); *see also Santosky v. Kramer*, 455 U.S. 745, 747, 102 S. Ct. 1388, 71 L.Ed.2d 599 (1982); *In re Angela E.*, 303 S.W.3d at 250.

---

[3] We also review whether the trial court erred in concluding that termination was in the best interests of the children. *See In re Carrington H.*, 483 S.W.3d 507, 525–26 (Tenn. 2016) ("[I]n an appeal from an order terminating parental rights the Court of Appeals must review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests, regardless of whether the parent challenges these findings on appeal.") (footnote omitted).

- 4 -

*In re Carrington H.*, 483 S.W.3d at 522–23. Tennessee Code Annotated section 36-1-113 provides the various grounds for termination of parental rights. *In re Jacobe M.J.*, 434 S.W.3d 565, 568 (Tenn. Ct. App. 2013); *see also* Tenn. Code Ann. § 36-1-113(g). "A party seeking to terminate parental rights must prove both the existence of one of the statutory grounds for termination and that termination is in the child's best interest." *Id.* (citing Tenn. Code Ann. § 36-1-113(c)).

In light of the substantial interests at stake in termination proceedings, the heightened standard of clear and convincing evidence applies. *In re Carrington H.*, 483 S.W.3d at 522 (citing *Santosky*, 455 U.S. at 769). This heightened burden "minimizes the risk of erroneous governmental interference with fundamental parental rights[,]" and "enables the fact-finder to form a firm belief or conviction regarding the truth of the facts[.]" *Id.* (citing *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010)). "The clear-and-convincing-evidence standard ensures that the facts are established as highly probable, rather than as simply more probable than not." *Id.* (citing *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005)). Accordingly, the standard of review in termination of parental rights cases is as follows:

> An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). *In re Bernard T.*, 319 S.W.3d at 596; *In re Angela E.*, 303 S.W.3d at 246. Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. *In re Bernard T.*, 319 S.W.3d at 596; *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007). In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. *In re Bernard T.*, 319 S.W.3d at 596–97. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. *In re M.L.P.*, 281 S.W.3d at 393 (quoting *In re Adoption of A.M.H.*, 215 S.W.3d at 810). Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness. *In re Angela E.*, 303 S.W.3d at 246.

*In re Carrington H.*, 483 S.W.3d at 523–24.

### Discussion

**I.      Grounds for Termination**

Here, the trial court found that DCS proved two grounds for termination by clear and convincing evidence: persistence of conditions and Mother's ten-year prison sentence while the children were under the age of eight years old. We address each ground in turn.

## A. Persistence of Conditions

Tennessee Code Annotated section 36-1-113(g)(3)(A) provides that a person's parental rights can be terminated when:

> The child has been removed from the home or the physical or legal custody of a parent or guardian for a period of six (6) months by a court order entered at any stage of proceedings in which a petition has been filed in the juvenile court alleging that a child is a dependent and neglected child, and:
>
> > (i) The conditions that led to the child's removal still persist, preventing the child's safe return to the care of the parent or guardian, or other conditions exist that, in all reasonable probability, would cause the child to be subjected to further abuse or neglect, preventing the child's safe return to the care of the parent or guardian;
> >
> > (ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent or guardian in the near future; and
> >
> > (iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable, and permanent home.

The purpose of the persistence of conditions ground "is to prevent the child's lingering in the uncertain status of foster child if a parent cannot within a reasonable time demonstrate an ability to provide a safe and caring environment for the child." *In re Navada N.*, 498 S.W.3d 579, 605 (Tenn. Ct. App. 2016). Consequently, "[t]he failure to remedy the conditions which led to the removal need not be willful." *Id.* (citing *In re T.S. and M.S.*, No. M1999-01286-COA-R3-CV, 2000 WL 964775, at *6 (Tenn. Ct. App. July 13, 2000)). This ground for termination applies "only where the prior court order removing the child from the parent's home was based on a judicial finding of dependency, neglect, or abuse." *In re Audrey S.*, 182 S.W.3d at 874; *see also In re Veronica T.*, No. M2017-00726-COA-R3-PT, 2018 WL 1410909, at *4 (Tenn. Ct. App. Mar. 21, 2018) ("An essential prerequisite to establishing persistence of conditions is evidence of a 'prior court order removing the child from the parent's home . . . based on a judicial finding of dependency, neglect or abuse.'" (quoting *In re Aiden R.*, No. E2015-01799-COA-R3-PT, 2016 WL 3564313, at *9 (Tenn. Ct. App. June 23, 2016))).

Importantly, "the child must not only have been adjudicated dependent and neglected, but he or she must also have been removed from the defendant parent's home." *In re Veronica T.*, 2018 WL 1410909, at *4 (citing *In re Mickia J.*, No. E2016-00046-COA-R3-PT, 2016 WL 5210794, at *5 (Tenn. Ct. App. Sept. 19, 2016)); *see also In re Miracle M.*, No. W2017-00068-COA-R3-PT, 2017 WL 3836020, at *8 (Tenn. Ct. App. Aug. 30, 2017) ("[T]he statutory ground of persistence of conditions is not applicable . . . as the record contains no evidence to suggest that the [c]hildren were residing in [f]ather's home at the time of their removal."). To that point, we have also previously held that "the pertinent question in a termination proceeding based upon the statutory ground of persistence of conditions is whether [the parent] has continued to neglect the [c]hild" after the child has been removed from the parent's custody. *In re Emilie A.M.*, No. E2011-02416-COA-R3-PT, 2012 WL 4053040, at *6 (Tenn. Ct. App. Sept. 17, 2012) (citing *State v. C.H.K.*, 154 S.W.3d 586, 593 (Tenn. Ct. App. 2004)); *see also In re Audrey S.*, 182 S.W.3d at 873 (explaining that the purpose behind the persistence of conditions ground is to prevent children from languishing in foster care when a parent makes minimal efforts towards reunification).

Here, the basis of DCS's case as to persistence of conditions was that Mother remained incarcerated and as such could not provide for the children; indeed, the sole allegation in the petition for termination regarding this ground provides that "[Mother] continues to lack the proper housing and financial resources to care for the children because she remains incarcerated." The trial court made the following pertinent findings regarding this ground:

> [Mother] is currently incarcerated in the West Tennessee State Penitentiary on a fifteen (15) year sentence for Voluntary Manslaughter, a Class C Felony. . . . The children have lingered in foster-care for over two (2) years. During those two years, [Mother] made no efforts to remedy the conditions that led to the children's removal. Furthermore, there are other conditions that exist, in that [Mother] remains incarcerated under a fifteen (15) year sentence. She does not have suitable housing to raise her children, since the children cannot live in a prison cell. Further, other conditions exist in that [Mother] is not able to financially provide for the basic needs of her children. The Court found that other conditions exist in that [Mother] is in prison for having killed someone and that condition still exists (persists). Further, the Court found that just the possibility and not the probability of parole indicates that that the condition still exists. The Court found that the Department had proven this ground by clear and convincing evidence.

It is clear that both DCS and the trial court treated Mother's incarceration itself as the persistent condition preventing the children's return to Mother's custody. However, as we explained in *State v. C.H.K.*, 154 S.W.3d at 592, the mere fact of a parent's incarceration is not grounds for termination of parental rights except under particular circumstances. In

*C.H.K.*, the child at issue was removed from the mother's care after DCS discovered that the mother was leaving the child unattended in a motel room. *Id.* at 588. Soon after the child was removed, the mother pled guilty to various criminal charges and was incarcerated. *Id.* DCS filed a petition to terminate the mother's parental rights, and the trial court found several grounds for termination, including persistence of conditions. *Id.* at 589. As to that ground, the trial court found that the mother was unavailable to care for the child as a consequence of her incarceration and that this condition still existed by the time of trial. *Id.* at 592. On appeal, this Court considered whether Mother's incarceration, standing alone, amounted to a persistent condition preventing the child's return to mother's custody, and concluded that it did not. *Id.* In so holding, we explained that "the legislature did not intend that the incarceration of a parent constitutes a condition which would cause the child to be subject to abuse or neglect except under specified circumstances." *Id.* We noted that with regard to persistence of conditions, the pertinent question is whether the mother continued to neglect the child, and explained that because the mother had been incarcerated she had "not been presented with an opportunity to care for [the child] and it is not possible that she ha[d] demonstrated an intention to neglect him." *Id.* We further explained:

> Tenn. Code Ann. § 36-1-113(g)(3)(A) also provides that termination may be based upon the existence of "other conditions which in all probability would cause the child to be subjected to further abuse or neglect and which, therefore, prevent the child's safe return to the care of the parent." However, it is our determination that the legislature did not intend that the incarceration of a parent constitutes a condition which would cause the child to be subject to abuse or neglect except under specified circumstances. We are compelled to reach this conclusion because Tenn. Code Ann. § 36-1-113(g)(6) allows initiation of parental termination if "[t]he parent has been confined in a correctional or detention facility of any type, by order of the court as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under eight (8) years of age at the time the sentence is entered by the court."

*Id.* Consequently, the *C.H.K.* court reversed the trial court's finding that the mother's parental rights should be terminated based on persistence of conditions. *Id.* We have since reiterated the holding of *C.H.K.* *See In re Chandler M.*, No. M2013-02455-COA-R3-PT, 2014 WL 3586499 (Tenn. Ct. App. July 21, 2014); *In re Emilie A.M.*, 2012 WL 4053040.

The facts of *In re Chandler M.* are analogous to the present case. In that case, the father at issue was incarcerated when his child was removed from the mother's custody, and father did not know at that time that he was the child's father. *Id.* at *1. At some point after the child had been removed from his mother's care, the father of the child pled guilty to several criminal offenses and received an effective sentence of twelve years in prison. *Id.* DCS eventually filed a petition to terminate father's parental rights, alleging several

grounds for termination, including persistence of conditions. *Id.* at *2. The trial court terminated the father's rights and he appealed, arguing that his parental rights could not be terminated based on this ground when he was never afforded the opportunity to parent the child. *Id.* at *5. We agreed with the father, explaining as follows:

> [T]he [c]hild was removed based upon a finding of dependency and neglect relative to [m]other. Father had not even been identified as a potential putative father at the time of removal or when the [c]hild was subsequently adjudicated as dependent and neglected. While it can be argued that the [c]hild was also removed because [f]ather was unavailable to care for the [c]hild due to his incarceration, the pertinent question in a termination proceeding based upon the statutory ground of persistence of conditions is whether [f]ather has continued to neglect the [c]hild. *State v. C.H.K.*, 154 S.W.3d 586, 592 (Tenn. Ct. App. 2004). Father has not had an opportunity to properly care for the [c]hild or continue in his alleged neglect of the [c]hild because he has been incarcerated since he learned of his paternity. *Id.* Additionally, [f]ather's incarceration, standing alone, cannot support this ground of termination as an "other condition" when the legislature has already provided for termination due to a parent's incarceration pursuant to section 36-1-113(g)(6). *Id.* Accordingly, we conclude that the trial court erred in relying on section 36-1-113(g)(3) as a statutory ground for termination. We reverse the trial court's finding that termination of [f]ather's parental rights was appropriate based upon the alleged persistence of conditions that led to removal.

> *Id.*

*In re Chandler M.* is applicable here. The children were removed because of dependency and neglect arising from Father's drug abuse. Mother's whereabouts were unknown at the time of removal, and it is undisputed that the children had not been in her care or custody for approximately two years. Mother's incarceration was not the basis of the children's removal, nor is there any evidence that the children were living in Mother's household at the time of removal. *See In re Veronica T.*, 2018 WL 1410909, at *4 (explaining that for persistence of conditions to apply, "the child must not only have been adjudicated dependent and neglected, but he or she must also have been removed from the defendant parent's home").

While it could be argued that the children were also removed because Mother was entirely unavailable to care for the Children and had in fact abandoned them, this was not what DCS pled in its termination petition, nor was this the basis of the trial court's finding as to the persistence of conditions ground. Rather, the petition alleged simply that Mother could not care for the children as a consequence of her incarceration, and the trial court's order reiterates this statement. As we have explained, however, Mother did not cause the

conditions underpinning the children's removal to DCS custody, and "[Mother's] incarceration, standing alone, cannot support this ground of termination as an 'other condition' when the legislature has already provided for termination due to a parent's incarceration pursuant to section 36-1-113(g)(6)." *Id.*; Tenn. Code Ann. § 36-1-113(g)(3). Ultimately, the salient issue here is whether Mother continued to neglect the children. *In re Chandler M.*, 2014 WL 3586499, at *5 (citing *State v. C.H.K.*, 154 S.W.3d at 592). However, there is no proof of Mother's continued neglect after the children's removal into DCS custody because she was incarcerated before that event occurred.[4]

Accordingly, we conclude that the trial court erred in relying on section 36-1-113(g)(3) as a basis for termination of Mother's parental rights, and we reverse the trial court's finding that termination of Mother's parental rights was appropriate based upon the alleged persistence of conditions that led to removal.

## B. Ten-Year Sentence

Turning to the second ground alleged for termination, Tennessee Code Annotated section 36-1-113(g)(6) provides that grounds for termination exist when "[t]he parent has been confined in a correctional or detention facility of any type, by order of the court as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under eight (8) years of age at the time the sentence is entered by the court[.]" Only two findings are necessary relative to this statutory ground: (1) that the parent has been confined to a correction or detention facility of any type, by order of the court as a result of a criminal act, under a sentence of ten or more years, and (2) that the child at issue was under eight years of age at the time the sentence was entered by the court. *In re Jamazin H.*, No. W2013-01986-COA-R3-PT, 2014 WL 2442548, at *4 (Tenn. Ct. App. May 28, 2014) (citing *In re E.M.P.*, No. E2006-00446-COA-R3-PT, 2006 WL 2191250, at *6 (Tenn. Ct. App. Aug. 3, 2006)). Establishing this ground for termination is not a "difficult task because the parent either is or is not serving a prison sentence of at least ten years, and the child either was or was not eight years old when the sentence was imposed." *Id.* (quoting *In re T.M.G.*, 283 S.W.3d 318, 325 n.4 (Tenn. Ct. App. 2008)). In this sense, "the

---

[4] This case should not be confused with cases in which a parent's established pattern of recidivism is treated as a persistent condition, when the parent has had the opportunity to work towards reunification with the child after the child's removal, but instead the parent is reincarcerated or continues to engage in criminal activity. *See, e.g.*, *In re Kambri P.*, No. M2019-01352-COA-R3-PT, 2020 WL 2991793 (Tenn. Ct. App. June 4, 2020) (both parents' rights terminated for persistence of conditions when history of criminal activity and incarcerations rendered the parents consistently unable to provide a stable, suitable home for children); *In re A.B.*, No. E2016-00504-COA-R3-PT, 2017 WL 111291, at *7 (Tenn. Ct. App. Jan. 11, 2017) ("The conditions leading to the removal of the [c]hildren are [m]other's drug abuse and criminal activity. . . . Mother has [] incurred new legal charges. It is clear [m]other's drug abuse and criminal activity continue."); *In re Jaylah W.*, 486 S.W.3d 537, 556 (Tenn. Ct. App. 2015) (affirming termination of mother's parental rights when children were removed due to mother's "pattern of drug and alcohol abuse, violent and threatening behavior, and criminal activity[,]" and those conditions persisted at the time of trial).

legislature has established a 'bright line' ground for termination of parental rights" in enacting section 36-1-113(g)(6). *In re Adoption of K.B.H.*, 206 S.W.3d 80, 85 (Tenn. Ct. App. 2006)).[5]

Mother does not dispute on appeal that DCS satisfied section 36-1-113(g)(6) by clear and convincing evidence. Mother was sentenced to fifteen years in prison on March 12, 2018. At that time, the children were five and six years old, respectively. Consequently, the two elements of section 36-1-113(g)(6) are satisfied here, and we affirm the trial court's decision that Mother's parental rights should be terminated pursuant to this statutory ground.

## II.    Best Interests

In addition to proving at least one statutory ground for termination, a party seeking to terminate a parent's rights must prove by clear and convincing evidence that termination is in the child's best interests. Tenn. Code Ann. § 36-1-113(c). Indeed, "a finding of unfitness does not necessarily require that the parent's rights be terminated." *In re Marr*, 194 S.W.3d 490, 498 (Tenn. Ct. App. 2005) (citing *White v. Moody*, 171 S.W.3d 187 (Tenn. Ct. App. 2004)). Rather, our termination statutes recognize that "not all parental conduct is irredeemable[,]" and that "terminating an unfit parent's parental rights is not always in the child's best interests." *Id.* As such, the focus of the best interests analysis is not the parent but rather the child. *Id.*; *see also White*, 171 S.W.3d at 194 ("[A] child's best interest must be viewed from the child's, rather than the parent's, perspective.").

Tennessee Code Annotated section 36-1-113(i) provides nine factors for analyzing best interests:

> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
>
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
>
> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

---

[5] It is also well-established that a parent's eligibility for parole does not affect whether section 36-1-113(g)(6) is satisfied. *See In re Jamazin H.*, 2014 WL 2442548, at *11 n.6 ("This ground for termination applies regardless of the possibility of early parole[.]"); *In re Adoption of K.B.H.*, 206 S.W.3d at 85 ("At the time [section 36-1-113(g)(6)] was enacted, the legislature was certainly aware of parole and other means by which a prisoner could end up released from his or her incarceration prior to expiration of the full sentence, and did not include such circumstances in the language of the statute.").

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

This list is non-exhaustive. *In re Marr*, 194 S.W.3d at 499. "Ascertaining a child's best interests does not call for a rote examination of each of Tenn. Code Ann. § 36-1-113(i)'s nine factors and then a determination of whether the sum of the factors tips in favor of or against the parent." *Id.* "The relevancy and weight to be given each factor depends on the unique facts of each case." *Id.* "Thus, depending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis." *Id.* (citing *In re Audrey S.*, 182 S.W.3d at 877).

The trial court in this case found that termination of Mother's parental rights was in the best interests of both children. Having reviewed the record and applicable case law, we agree. Mother asserts that the trial court erred in its best interests analysis, arguing that the trial court failed to appropriately consider all nine of the statutory factors. In support, Mother points out that the trial court's analysis focuses heavily on Mother's incarceration and the fact that the children are currently in a stable, pre-adoptive home. Mother's argument is unavailing. The trial court's order contains a detailed best interests analysis and reflects that it considered other factors aside from Mother's incarceration and the children's current placement. For instance, the trial court addressed the fact that Mother has essentially no relationship with either child and has not seen or spoken to the children

in several years.  The trial court also pointed out, to Mother's credit, that there has never been any allegation that the children have been abused.

Further, it is well-settled that the best interests analysis is highly fact sensitive and that depending upon the particular circumstances of case, one or more factors may be outcome determinative. *In re Audrey S.*, 182 S.W.3d at 877.  Under the particular circumstances of this case, we agree with the trial court that Mother's lengthy prison sentence and the children's placement in a stable, pre-adoptive home are the factors that militate most heavily in favor of termination. *See* Tenn. Code Ann. § 36-1-113(i)(5) & (7). It is not uncommon for a parent's lengthy prison sentence to be considered compelling in the best interests portion of a termination proceeding, because a long sentence necessarily leads to the parent's prolonged absence from the child's every-day life.  *See, e.g.*, *In re Dominique L.H.*, 393 S.W.3d 710, 718 (Tenn. Ct. App. 2012) ("In addition to the problems associated with the criminal activity itself, incarceration poses a further hurdle: the continued absence of a parent from the child's life. . . . [A] lengthy delay in a child's return to the custody of its biological parent is a strong indication that termination of parental rights is in the best interest of the child."); *In re C.A.M.*, No. W2008-02003-COA-R3-PT, 2009 WL 3739447, at *7 (Tenn. Ct. App. Nov. 9, 2009) (despite undisputed evidence that incarcerated father at issue loved his child, the factors nevertheless weighed "heavily in favor of termination" because the father "has no home to offer [the child], [ ] will probably remain incarcerated for the foreseeable future, and his prospects for establishing such a home after he is released are uncertain at best"); *In re M.H.*, No. M2005-00117-COA-R3-PT, 2005 WL 3273073, at *13 (Tenn. Ct. App. Dec. 2, 2005) ("This court has frequently and for a long time recognized that, as a general proposition, a child's best interest was served by termination of parental rights where, no matter the cause, there was no reasonable expectation the child could be reunited with a parent in the near future.").  Nor is it unusual to give significant weight to the factors regarding a child's current foster placement when the child is thriving.  *See, e.g.*, *In re Haskel S.*, No. M2019-02256-COA-R3-PT, 2020 WL 6780265, at *13 (Tenn. Ct. App. Nov. 18, 2020) (ultimately concluding that termination of father's rights was in child's best interest when child was in stable, pre-adoptive home and called foster parents "mom" and "dad"); *In re M.E.T.*, No. W2016-00682-COA-R3-PT, 2016 WL 6962306, at *10 (Tenn. Ct. App. Nov. 29, 2016) (noting that the factor regarding the child's current placement was "compelling" in that case because of the length of time the child had been with his foster family and his profound bond with them).

Here, we agree with the trial court that Mother's lengthy prison sentence and the success of the children's current placement militate heavily in favor of termination. *See* Tenn. Code Ann. § 36-1-113(i)(5) & (7).  We also agree with the trial court's overall conclusion that Mother's current situation, unfortunately, makes it impossible for Mother

to meaningfully adjust her circumstances, provide a safe and suitable home for the children, or support the children financially. *See* Tenn. Code Ann. § 36-1-113(i)(1), (7), (9).[6]

In addition to the foregoing factors, we also find it compelling that Mother had not seen the children for two years prior to DCS removing them from Father's custody. *See id.* § 36-1-113(i)(3) & (4). Simply put, the record is bereft of any actions on Mother's part to be a parent to the children, or any indication that a relationship, much less a meaningful relationship, exists between them. The evidence at trial reflected that the children are thriving in the care of Foster Parents and wish to be adopted. The children refer to the Foster Parents as "Mom" and "Dad," and consider Foster Parents' adopted baby their younger sibling. Although Mother contended at trial that she loves the children and wishes to provide for them after her release from prison, Mother's wishes are not a basis for determining the children's best interests, and the record reflects that the children do not, sadly, reciprocate Mother's feelings. *See In re M.B.*, No. M2007-02755-COA-R3-PT, 2008 WL 2229518, at *8 (Tenn. Ct. App. May 29, 2008) ("[O]nce a ground for termination has been established, [the parent's] wishes are not the basis for determining [a child's] best interest."). Taken together with the fact that the children are bonded to their foster family and wish to be adopted, the lack of a meaningful relationship between Mother and the children weighs heavily in favor of termination in this case. *See* Tenn. Code Ann. § 36-1-11(i)(3)–(5).

Contrary to Mother's assertions, the trial court made detailed findings in consideration of the statutory best interests factors. Upon our careful review of the record, the evidence does not preponderate against the relevant findings. We find, as did the trial court, the evidence to be clear and convincing that termination of Mother's parental rights is in the children's best interests.

## Conclusion

The judgment of the Henderson County Chancery Court is reversed in part, and affirmed in part, resulting in our affirming the termination of Mother's parental rights. This cause is remanded to the trial court for collections of costs below. Costs on appeal are assessed against Mother, Diane W., for which execution may issue if necessary.

KRISTI M. DAVIS, JUDGE

---

[6] We do note, however, that the record shows Mother has been working during her incarceration and on a few occasions has sent very small amounts of money for the children. We commend Mother for this effort.